## Saylor v. Kentucky-Cardinal Coal Corporation and Strauss.

(Decided November 25, 1924.)

### Appeal from Bell Circuit Court.

1. Estoppel—Mere Silence of Landowner with Reasonable Opportunity to Learn of Sale of Land by Another Held Not to Estop Him to Maintain Ejectment.—Even if owner of land sold by his father had a reasonable opportunity to learn of sale, and kept silent, he was not thereby estopped to sue in ejectment.

2. Estoppel—Essential Elements of "Estoppel" Stated.—To create "estoppel," knowledge must be carried to party sought to be estopped, and with such knowledge he must have acted or spoken

or have remained silent under circumstances that called for statement on his part, and such statements or conduct must have been acted on to prejudice of party seeking estoppel.

3. Boundaries—Owner of Land Conveyed by Another Without His Knowledge Held Entitled to Peremptory Instruction.—Where small tract of plaintiff's land adjoining that of his father was sold by his father to defendant's predecessor without his knowledge and he did not know that defendant was encroaching upon it until survey was made, he was entitled to a peremptory instruction in ejectment brought promptly after survey was made.

N. J. WELLER for appellant.

N. R. PATTERSON for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

S. C. Saylor sued the Kentucky Cardinal Coal Corporation and J. C. Strauss in ejectment, both parties claiming through a common vendor. From a verdict and judgment in favor of first named defendant the plaintiff appeals.

It appears that appellant was the owner of a small tract of land lying on the south bank of the Cumberland river and containing about forty acres, which he had purchased from his father, who also owned a farm adjoining this on the south.

In the year 1911 a railroad was constructed up the Cumberland valley, and a right of way 100 feet wide was condemned over appellant's land along his southern line, except a strip of his land about 240 feet long and 35 or 40 feet wide, was cut off to the south of the right of way and not condemned. Appellant's house was on the land condemned and he moved it northward off the right of way, and continued to occupy it as a residence and store until about the year 1915, when he sold to the appellee his land lying to the north of the right of way and moved to Madison county, where he has since resided, the residence being not exceeding 150 feet from the land in controversy.

In March, 1911, appellant's father sold and conveyed the land south of the railroad right of way to Bennett and Jones, including in the conveyance the strip in controversy, and by mesne conveyances it has reached the appellee, the present owner.

Appellant's father died in 1920. Shortly thereafter appellant had the strip of land surveyed and brought

this suit. The defense is an estoppel. Appellant testifies that he was not present at any of the negotiations between his father and Bennett and Jones, and did not know the disputed land was embraced in the deed made by his father to them. He did not know that appellee was encroaching upon the lot until it was surveyed in 1920, and that during all that period he was claiming it as his own, without any notice of appellees' claims until after his father's death.

Appellee claims that the disputed land is of slight value, but in view of its situation and shape, it (appellee) would be materially damaged if this land was owned by another. It has constructed switches on the railroad right of way alongside this lot, and has run a tail track for a distance of eight feet over a corner of the disputed land, and sloped its other track from this lot; that appellant resided in 150 feet of the lot while this was being done and made no objection thereto, though he must have been cognizant thereof; that his father lived within 350 yards of him, and he must have known of his father's conveyance of this land; that afterwards he sold appellee all his land on the north side of the track without mentioning this strip, or at any time asserting any right thereto or claim therein.

The court instructed the jury:

"You will find for the plaintiff, S. C. Saylor, unless you believe from the evidence that plaintiff knew, or could reasonably have known, that his father, W. B. Saylor, was selling and conveying the land in dispute in this case to the defendant's vendors, Bennett & Jones, and should you believe from the evidence that plaintiff, with knowledge of such sale on the part of W. B. Saylor or with a reasonable opportunity to know of such sale, stood by and was silent and permitted the defendant's vendors to purchase said land and pay for same, then the law is for the defendant and you will so find."

This instruction is so patently erroneous as to hardly merit discussion. There is no principle of law making it the duty of a landowner to seek out and ascertain whether others are wrongfully entering into negotiations for his land. It would render land titles very insecure if one could be estopped from claiming his prop-

erty because he had failed to learn of such transactions or because he could have reasonably known of such sale. The law of estoppel is exactly the opposite. Knowledge must be carried to the party sought to be estopped and with such knowledge he must have acted or spoken, or have remained silent under circumstances that called for a statement on his part, and such statements or conduct must have been acted upon to the prejudice of the party seeking the estoppel.

Such facts do not appear in this record. Not only is the instruction erroneous, but under the facts stated the plaintiff was entitled to a peremptory instruction in his favor.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.